J-S05029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSAMYN JAMES MORROW | : | |
| | : | |
| Appellant | : | No. 829 MDA 2019 |

Appeal from the Judgment of Sentence Entered July 3, 2018,
in the Court of Common Pleas of York County,
Criminal Division at No(s):  CP-67-CR-0005964-2017.

BEFORE:  SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: APRIL 20, 2020**

Jessamyn James Morrow appeals from the judgment of sentence imposed after he was found guilty of aggravated assault, simple assault, harassment, and assault by prisoner.[1]  Upon review, we affirm.

Morrow's convictions arose from a physical altercation involving Morrow and Jacob Lee Ruth while both were both inmates at the York County Prison. During lunch, the two began arguing after Ruth gave his unwanted food to another inmate instead of Morrow.  After lunch, "count" was called, requiring the prisoners to return to their cells.  As Ruth was walking back to his cell on the bottom tier, Morrow jumped the railing from the top tier and attacked him. Ruth was unable to fight back.

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2701(a)(1), 2709(a)(1), and 2703(a).

Following the incident, Ruth was in substantial pain and had difficulty breathing. Ruth was taken to the hospital where he was admitted. Ruth suffered two broken ribs. He also had red marks resembling knuckles on his back and scratches on his elbows. Morrow sustained no injuries.

Morrow was criminally charged for his actions. Following trial, a jury found Morrow guilty of the aforementioned crimes; the trial court also found him guilty of summary harassment. The trial court sentenced Morrow to an aggregate term of five to ten years' incarceration. Morrow filed a post-sentence motion, which the trial court denied as untimely.

Thereafter, Morrow filed a Post Conviction Relief Act petition requesting reinstatement of his direct appeal rights, including the right to file a post-sentence motion, based upon counsel's ineffectiveness. The Commonwealth agreed, and the PCRA court granted that relief.

Instead of filing a post-sentence motion, however, Morrow filed a timely direct appeal. Both the trial court and Morrow complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Morrow raises the following two issues:

I. Whether the [t]rial [c]ourt improperly found there was sufficient evidence to support the conviction for [a]ggravated [a]ssault, [s]imple [a]ssault, and [a]ssault by [p]risoner given [Morrow's] evidence of self-defense?

II. Whether the jury's verdict of guilty of [a]ggravated [a]ssault, [s]imple [a]ssault, and [a]ssault by [p]risoner was against the weight of the evidence given [Morrow's] evidence of self-defense?

Morrow's Brief at 8.

Morrow's first issue challenges the sufficiency of the evidence. When analyzing whether the evidence was sufficient to support a conviction, this Court must "view the evidence in the light most favorable to the Commonwealth as the verdict winner in order to determine whether the jury could have found every element of the crime beyond a reasonable doubt." *Commonwealth v. Thomas*, 215 A.3d 36, 40 (Pa. 2019). "The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Brown*, 52 A.3d 320, 323 (Pa. Super. 2012). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Vargas*, 108 A.3d 858, 867 (Pa. Super. 2014) (*en banc*). Additionally, this Court cannot "re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id*. A challenge to the sufficiency of the evidence presents a pure question of law and, as such, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Jacoby*, 170 A.3d 1065, 1076 (Pa. 2017).

Morrow argues that the evidence was insufficient to sustain his convictions for aggravated assault, simple assault, and assault by prisoner.[2]

_____

[2] We note that, although Morrow claims that he is challenging the sufficiency of evidence to sustain his simple assault conviction, he does not address it in

- 3 -

Specifically, Morrow contends that the Commonwealth failed to show that he intentionally, knowingly or recklessly attempted to cause serious bodily injury to another by his actions, or acted in a way that was likely to produce a serious injury. Morrow's Brief at 18.

A person is guilty of aggravated assault if he: "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1).

Similarly, a person is guilty of assault by prisoner if that person is "confined in or committed to any … county detention facility … located in this Commonwealth … [and] if he, while so confined … intentionally or knowingly, commits an assault upon another … by any means or force likely to produce serious bodily injury." 18 Pa.C.S.A. § 2703(a).

Based upon our review of the record, we conclude that the Commonwealth presented sufficient evidence to demonstrate that Morrow intentionally, knowingly or recklessly attempted to cause serious bodily injury to another by his actions, or acted in a way that was likely to produce a serious injury to establish both offenses. Contrary to Morrow's contention, the evidence demonstrated he intended to seriously injure Ruth. At the time of the incident, Ruth was going through detox. He had lost a lot of weight and

_____

his brief. As such, Morrow waived it. **Commonwealth v. A.W. Robl Transport.**, 747 A.2d 400, 405 (Pa. Super. 2000). We therefore do not address it.

was weak. Morrow, on the other hand, was substantially larger than Ruth and a skilled boxer. After lunch, as the inmates returned to their cells, Morrow initiated an attack on Ruth by suddenly jumping from the top tier of cells to the bottom tier, a six-foot drop, where Ruth was walking. Morrow landed on Ruth's back, and both fell to the ground. Morrow punched Ruth multiple times in the back, chest and head and kicked him. Because of Ruth's condition, he was helpless to fight back and did not hit Morrow. **See** Trial Court Opinion, 9/24/19, at 6-7.

The evidence also demonstrated that Ruth actually suffered serious injuries. Morrow attacked Ruth with such force that he broke two of Ruth's ribs. Ruth was in a lot of pain and unable to breathe. These injuries required Ruth to be hospitalized. Trial Court Opinion, 7/24/19, at 5-6. Although Morrow claimed that after the attack, Ruth said "I'm good", suggesting Ruth was uninjured, Ruth explained that he only said that to stop Morrow from hitting him. The jury credited Ruth's explanation. As the finder of fact, the jury was free to determine which testimony to believe. **See Commonwealth v. Tate**, 401 A.2d 353, 354 (Pa. 1979).

Additionally, Morrow argues that the Commonwealth failed to present sufficient evidence to overcome his claim of self-defense. At trial, Morrow testified that during their lunchtime confrontation, Ruth threatened to stab him with pencils he had in his cell. According to Morrow, he was justified in attacking Ruth because he had to prevent Ruth from getting the pencils. Morrow's Brief at 18-20.

Generally, an individual is justified in using force upon another person "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505 (a). "If the defendant properly raises self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is then on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense." **Commonwealth v. Smith**, 97 A.3d 782, 787 (Pa. Super. 2014) (internal quotations and citations omitted).

We first note that, given the facts of this case, the jury could have found that Morrow's claim of self-defense was not credible. While "the Commonwealth is required to disprove a claim of self-defense . . . , a jury is not required to believe the testimony of the defendant who raises the claim." **Commonwealth v. Bullock**, 948 A.2d 818, 824 (Pa. Super. 2008). However, the Commonwealth cannot sustain its burden of proof **solely** on the fact finder's disbelief of the defendant's testimony. **Commonwealth v. Ward**, 188 A.3d 1301, 1304 (Pa. Super. 2018) *appeal denied*, 199 A.3d 341 (Pa. 2018) (emphasis added).

Nonetheless, based upon our review of the record, we conclude that the Commonwealth presented ample evidence to disprove Morrow's claim of self-defense. First, Ruth testified that he was returning to his cell only because "count" was going to take place; he never threatened Morrow. Second, although Morrow claimed that Ruth screamed in the hall that he was going to

- 6 -

stab Morrow, the trooper investigating the incident could not find anyone to corroborate Morrow's claim. Third, a fellow inmate testified that Morrow told him that he initiated the attack because of the disagreement over the food; Morrow never indicated to this fellow inmate that Ruth threatened him in any way. Finally, during Morrow's disciplinary hearing, a prison official testified that Morrow admitted he initiated the attack on Ruth and he was guilty of the assault on him; Morrow never indicated to the prison official that Ruth had threatened him.

Moreover, the evidence did not demonstrate that Morrow's use of force was immediately necessary for his own protection against the unlawful use of force by the other person. "[F]orce may be met with force so long as it is only force enough to repel the attack." *Commonwealth v. Pollino*, 467 A.2d 1298, 1300 (Pa. 1983). Here, Ruth did not attack Morrow; instead, Morrow initiated the attack by jumping over a railing and landing on Ruth's back. Under these circumstances, the Commonwealth showed that Morrow's use of force was not justified.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that the Commonwealth presented sufficient evidence to prove the elements of aggravated assault and assault by prisoner and to disprove that Morrow acted in self-defense. Accordingly, Morrow's first issue entitles him to no relief.

In his second issue, Morrow claims that the verdict was against the weight of the evidence. Specifically, Morrow claims that his and Ruth's

testimony was the only direct evidence of the incident. According to Morrow, the jury gave his testimony inadequate weight, and instead, credited Ruth's testimony, which was full of inconsistencies and raised serious issues of credibility. Morrow's Brief at 20-21.

Initially, we observe that in order to properly preserve a challenge to the weight of the evidence, an appellant must raise that claim before the trial court. *See* Pa.R.Crim.P. 607(A). A defendant may raise it with the trial court orally or in a written motion prior to sentencing, or in a post-sentence motion. *Id.*

Here, although the PCRA court reinstated Morrow's right to file a post-sentence motion, he did not do so. He also failed to indicate where in the record he preserved this claim prior to sentencing. *See* Pa.R.A.P. 2119(e) (requiring an appellant to set forth in his brief where in the record he preserved the issue before the trial court). Consequently, this issue is waived. *See Commonwealth v. Griffin*, 65 A.3d 932, 938 (Pa. Super. 2013) (finding a weight-of-the-evidence claim waived where the appellant failed to raise it in a pre-sentence motion, did not address the issue orally prior to sentencing, and did not raise it in a post-sentence motion). We therefore cannot address the merits of this issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>04/20/2020</u>